IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CASE NO. 3:25-CR-778(CMC) |
| v. ) | |
| ROBERT JOHN MAY, III, ) | MOTION TO SUPPRESS AND REQUEST |
| ) | A FRANKS HEARING |
| Defendant ) | |
| ) | |

COMES NOW the defendant Robert John May, III, pursuant to Fed. R. Crim. P. 12 to: (1) suppress items seized during a search of his home on August 5, 2024; (2) request this Court order a hearing regarding government misconduct in procuring the issuance of a search warrant pursuant to Franks v. Delaware, 438 U.S. 154 (1978); and (3) require Special Agent Britton Baker Lorenzen of Homeland Security Investigations to testify at this hearing.

FACTUAL BACKGROUND

On May 27, 2024, the National Center for Missing and Exploited Children ("NCMEC") received a CyberTip from Kik[1] regarding activity on its platform between March 30 and April 4, 2024. The Lexington County

Sheriff's Department ("LCSD") began an investigation into the CyberTip in June 2024. On June 27, 2024, LCSD obtained a search warrant for the username "joebidennnn69" associated with the kik account. The LCSD also obtained another search warrant for the AT&T account associated with the IP address identified in the CyberTip. After executing and receiving returns on these warrants, Homeland Security Investigations ("HSI") applied for, and obtained, a search warrant for the May residence on August 1, 2024. It was executed four days later. Law enforcement officers seized 35 electronic devices from the home, including cellphones, laptops, memory sticks, SD cards, CDs, and internal and external hard drives. No child pornography was located on any of the seized devices.

Mr. May was indicted on June 10, 2025, and the court held a detention hearing following his arrest. During the June 12, 2025 detention hearing, Agent Lorenzen acknowledged during her testimony that no child pornography or child pornography artifacts were found on any seized device. See Arraignment/Detention Hearing Transcript at page 43, lines 19-24. On cross examination at the detention hearing, Agent Lorenzen testified as

below:

Q.    As far as you talk about some generalities
a little bit about general cases of these
things occur, how often is it that you
prefer -- execute a search warrant and
there is no CSAM material or artifacts
on any of the devices?

A.    Oh, it is very common.

Q.    Very common?

A.    Yes.

Q.    So if there is a search of federal cases
that we will find many, many cases where
there is zero evidence on any devices after
execution of a search warrant?

A.    With the technology of cloud-based systems,[2]
yes, you are going to find that there --
commonly there are not items actually
saved on the camera roll of a phone.

See Assignment/Detention Hearing Transcript at page 62,
lines 17-25 and page 63, lines 1-5.

Cross examination continued and concluded with
the exchange below:

Q. And so for as execution of a search warrant either through a cloud service or through a direct device, it is your testimony that it is very, very common to -- have an execution of a search warrant in a federal case and there be no CSAM materials or artifacts in any of that, either on the devices or in a cloud storage?

A. Federal or State, yes.

See Arraignment/Detention Hearing Transcript at page 63, lines 21-25 and page 64, lines 1-3.

In the affidavit for the search warrant signed by Judge Paige J. Gossett on August 1, 2024, Agent Lorenzen stated the following:

As for staleness concerns, individuals who collect child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect from discovery, theft, and damage their collections of illicit materials. The known desire of such individuals to retain child pornography, together with the sense of security afforded by using computers

provides probable cause to believe that computer images, especially child pornography and erotic nudity involving minors, will be retained by the collector indefinitly.

See Search Warrant Affidavit, paragraph 9, Subsection E.

In the same document, Agent Lorenzen describes other characteristics of individuals who collect child pornography including how they increase the size of their collection. See Search Warrant Affidavit, paragraph # 9, Subsections B, C, and D.

Further into the same document, Agent Lorenzen states:

(1) "... there is probable cause to believe that the Target Location contains evidence of violations of the Target Offense including on devices in Target Individual's possession." See Search Warrant Affidavit, paragraph 19.

(2) "... there is probable cause to believe the Target Location is used by the Target Individual to store electronic devices containing evidence

of the target offense." See Search Warrant Affidavit, paragraph 24.

(3) "...there is probable cause to believe that the Target Location contains evidence of violations of the Target Offense." See Search Warrant Affidavit, paragraph 25.

THIS SECTION LEFT BLANK

## LEGAL STANDARD

### FRANKS v. DELEWARE

In United States v. Leon, the Supreme Court held that the Fourth Amendment exclusionary rule should not be applied to evidence obtained by officers acting in reasonable reliance on a warrant issued by a detached and neutral magistrate but ultimately found to be invalid. 468 U.S. 897 (1984). However, this reasonable reliance exception does not apply when "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have know was false except for his reckless disregard of the truth." Id. at 923 (citing Franks v. Deleware, 438 U.S. 154 (1978)). "[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." Franks, 438 U.S. 154, 156. Franks also applies when an affiant omits material facts "with the intent to make or in reckless disregard of whether they thereby made, the affidavit misleading." U.S. v. Colkley, 899 F.2d 297,

300.

Thus, to earn a Franks Hearing, the defendant must make a substantial preliminary showing that (1) "the affiant either intentionally or recklessly made a materially false statement or that the affiant intentionally or recklessly omitted material information from the affidavit" and (2) the omission or false statement was necessary to the finding of probable cause. US v. Stinson, 805 F. App'x 160, 162 (4th Cir 2020) (quoting US v. Lull, 824 F.3d 109, 114-115 (4th Cir 2016)); US v. Saunders, 828 F. App'x 900, 902 (4th Cir 2020).

To establish reckless disregard in the context of an included falsity, the defendant must show by a preponderance of the evidence that the "affiant must have been subjectively aware that the false statement ... would create a risk of misleading the reviewing magistrate judge and nevertheless chose to run that risk." US v. Pulley, 987 F.3d 370, 377 (4th Cir. 2021). In the context of an omission, "an officer acts with reckless disregard when she fails to inform the magistrate of facts she subjectively knew would negate probable cause." US v. Hass, 986 F.3d at 475 (4th Cir. 2021). Put simply, an omission occurred with at least reckless disregard of its

effects upon the affidavit... [if] any reasonable person would have known that [the information omitted] was the kind of thing the judge would wish to know. US v. Jacobs, 986 F.2d 1231, 1234-35 (8th Cir. 1993)

In assessing whether false statements and/or omissions are material to the finding of probable cause, the defendant must show that with the omissions supplemented to the affidavit and/or the false statements "set to one side, the affidavit's remaining content is insufficient to establish probable cause." US v Lull, 824 F.3d 109, 114.

PROBABLE CAUSE

In determining whether the corrected affidavit would be supported by probable cause, courts assess "the 'totality of the circumstances,' evaluating the affidavit as a whole and all circumstances set forth within." US v. Lull, 824 F.3d 109, 118; US v. Colkley, 899 F.2d 301-302; See Gates, 462 US. at 233, 103 S.Ct. 2317. In establishing probable cause law enforcement "must demonstrate, based on sworn facts, whether there is a fair probability that contraband, or evidence of a crime, will be found

in a particular place." US v. Lyles 910 F.3d 791. These facts within the probable cause affidavit must be truthful "in the sense that the information put forth is believed or appropriately accepted by the affiant as true." US v Tate, 524 F.3d 454.

In evaluating the existance of probable cause, a magistrate must consequently make "a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. That assessment must consider whether the facts supporting the affidavit are "so closely related to the time of the issuance of the warrant as to justify a finding of probable cause at that time." US v. McCall, 740 F.2d 1331 at 1335-36 (4th Cir 1984). "Evidence seized pursuant to a warrant supported by stale probable cause is not admissible in a criminal trial." US v. McCall, 740 F.2d 1331, 1336 (4th Cir. 1984)

## RELEVANT 4th CIRCUIT PRECEDENT

The Fourth Circuit has reckgonized a uniqueness to determining probable cause in CSAM cases, particularly as it relates to staleness. This

uniqueness has resulted in courts finding that a delay—even a substantial delay— between alleged CSAM activity and the issuance of a search warrant does not necessarily render the underlying information stale. The consensus for this position "rest on the 'widespread view' that collectors and distributors of child pornography value their sexually explicit materials highly, rarely if ever dispose of such material, and store it 'for long periods' in a secure place, typically in their homes." US v. Richardson 607, F.3d 357, 370 (4th Cir. 2010). It also rest, in many cases, on "the fact that digital media files persist for a long time and can often be forensically recovered even after being deleted." Richardson 607 F.3d at 370-371.

Applying this rationale, the Fourth Circuit held that a nearly four month delay does "not preclude a finding of probable cause based on staleness in light of ... [the affiant's] sworn statement that child pornographers rarely, if ever, dispose of their sexually explicit materials', and that even if a computer file is deleted from a hard drive or other computer media, a computer expert is still likely to retrieve ... such files through a scientific examination of the computer." Richardson, 607 F.3d at 370-371. The Fourth Circuit re-affirmed its Richardson

reasoning in Bosyk[3] stating that a law enforcement agent's affidavit — which included boilerplate language about collectors of child pornography and forensic search capabilities of law enforcement — allowed the issuing magistrate to infer someone at the defendant's home "likely downloaded, stored, and kept [CSAM] since people with an interest in child pornography tend to hoard their materials and retain them for a long time." Bosyk, 933 F.3d 331, 332.

The Fourth Circuit again re-affirmed its Richardson decision in Ebert,[4] Sanders,[5] and, most recently, Krueger.[6] In Krueger, the Fourth Circuit upheld the district court's decision to deny the defendant's suppression motion in which the district court cited Fourth Circuit case law sustaining search warrants of comparable time frames "where people are collecting and keeping [CSAM] materials" for extended periods of time. The Fourth Circuit elaborated further stating that based on the facts of the affidavit — specifically averments about the tendency of child pornographers to hoard CSAM and law enforcement's ability to recover deleted files — the magistrate could infer the defendant was likely to collect and retain CSAM images for an extended period of time and that even if the defendant tried to delete the illicit material, it could be

Forensically recovered months later.

In viewing Fourth Circuit precedant on CSAM and probable cause, particularly as it relates to staleness, it becomes clear that warrants sought months after the alleged illegal activity must be supported by an affidavit that avers child pornographers rarely, if ever, dispose of their collection of CSAM and that law enforcement can recover deleted computer files through forensic exams.

THIS SECTION LEFT BLANK

THIS SECTION LEFT BLANK

# ANALYSIS

The evidence shows Agent Lorenzen, with at least reckless disregard for the truth, omitted material statements from her probable cause affidavit used to secure a search warrant of the May residence. Additionally, Agent Lorenzen, with at least reckless disregard for the truth, included false statements in her probable cause affidavit used to secure a search warrant of the May residence.

Specifically, Agent Lorenzen omitted the following information she believed to be true:

(1) that it would be very, very common for a search of the May home and electronics to result in the discovery of no CSAM or CSAM artifacts and;

(2) that it would be very, very common for a search of any cloud storage account associated with Ms. May to result in the discovery of no CSAM or CSAM artifacts.

See Arraignment/Detention Hearing Transcript, page 63, lines 21-25; page 64, lines 1-3.

Furthermore, Agent Lorenzen included in her probable cause affidavit the following statements she knew

to be false:

(1) "... individuals who collect child pornography rarely if ever dispose of their sexually explicit material and may go to great lengths to conceal and protect from discovery, theft, and damage their collections of illicit materials. The known desire of such individuals to retain child pornography, together with the sense of security afforded by using computers, provides probable cause to believe that computer images, especially child pornography and erotic nudity involving minors, will be retained by the collector indefinitely. These individuals may protect their illicit materials by password, encryption, and other security measures, save it on moveable media such as CDs, DVDs, Flash memory, thumb drives, and removable hard drives, which can be very small in size... or send it to third party image storage sites via the internet."[8]

See Search Warrant Affidavit paragraph #9, subsection E.

(2) Subsections B, C, and D of paragraph #9 which further elaborate the characteristics of "individuals who collect child pornography."

(3) Paragraphs 19, 24, and 25 in which Agent Lorenzen submits to the Court that evidence of possession of child pornography will be found in the target location and on devices inside the target location.

In Agent Lorenzen's June 12, 2025 testimony, she confirmed that it was "very, very common" for law enforcement to execute a search warrant on a Target Location and discover no CSAM or CSAM artifacts in the residence, on the electronic devices seized, or in any cloud storage accounts belonging to the Target Individual. This testimony contradicts paragraph 9, subsection E; and paragraphs 19, 24, and 25 of the Search warrant Affidavit. Furthermore, subsections B, C, and D of paragraph 9 become, in view of Agent Lorenzen's testimony that the Target Individual will very, very commonly not have a collection of child pornography, statements designed to mislead as they describe the characteristics of child pornography collectors. Thus, to create the "corrected" affidavit as required by Franks, paragraph 9, subsection E — with the exception of its introductory clause — must be deleted and replaced by Agent Lorenzen's June 12, 2025 testimony relating to the high likelyhood that any search would result in

the discovery of no CSAM or CSAM artifacts. Paragraph 9, Sections B, C, and D must be deleted in their entirety and paragraphs 19, 24, and 25 must be supplemented with Agent Lorenzen's testimony.

## Intentionality

These omissions and false statements were made with at least reckless disregard for the truth given the fact that an agent's assessment of whether or not a suspected possessor of CSAM tends to actually possess CSAM is the kind of thing a magistrate would want to know in determining whether to authorize a search of a suspect's home. Likewise, given the Fourth Circuit's precedent on CSAM and staleness,[10] a magistrate would want to know if a suspect was likely to hoard and retain images of CSAM for an extended period of time or if the search would "very, very common(ly)" result in the discovery of no CSAM or CSAM artifacts.

Agent Lorenzen – like any reasonable person – clearly understood this because she began paragraph 9, subsection E of her original probable cause affidavit with the words "[a]s for

staleness concerns." The paragraph went on to describe the tendency of individuals who collect CSAM to rarely, if ever, dispose of their sexually illicit materials despite Agent Lorenzen's sworn belief that Ms. May's home and electronics would "very, very common[ly]" not contain any artifacts of CSAM, let alone a collection of it.

Furthermore, Agent Lorenzen is a highly skilled federal agent with over 25 years of experiance investigating child explotation and computer crimes. She has been trained to observe carefully and report accurattley. She has provided testimony countless times and applied for numerous warrants. She is undoubtly familiar with the requirements to obtain a search warrant and Fourth Circuit precedent on child pornography, particularly on the issue of staleness given her introductory clause of paragraph 9, subsection E in her probable cause affidavit. With these facts in mind, it is reasonable to infer such omissions and falsities by a careful and capable police officer are unlikely to be merley negligent.

## Materiality

The omissions and false statements are material to the finding of probable cause because once the omissions are supplemented to — and the falsities purged from — the affidavit, the affidavit no longer provides a substantial basis to believe evidence of CSAM possession would be found in the May residence or on the electronics within.[11] Furthermore, the corrected affidavit prevents a finding of probable cause due to the information supporting the warrant becoming stale.[12]

The corrected affidavit now states the following:

(1)  Paragraph 9, subsection E:
As for staleness concerns, it is very, very common to execute a search warrant and discover no CSAM or CSAM artifacts in the suspect's home, on his electronics, or in his cloud storage accounts.

(2)  Paragraph 9, subsection B, C, and D are deleted.

(3) Paragraph 19:
Based on my training and experiance, I submit that the Target Location and devices in the Target Location will very, very commonly not contain CSAM or CSAM artifacts.

(4) Paragraph 24:
Based on the above and my training and my experiances, I further submit the Target Location is used by the Target Individual to store electronic devices that will very, very commonly not contain CSAM or CSAM artifacts.

(5) Paragraph 25:
Based on the above, I respectfully submit that the target location very, very commonly will not contain CSAM or CSAM artifacts.

With the affidavit corrected, we re-evaluate for probable cause.

The government's argument establishing probable cause rested largely, given Fourth Circuit precedent on months long delays between

underlying CSAM activity and the issuance of a warrant, on Agent Lorenzen's original - but false - averments that collectors of CSAM rarely, if ever, dispose of their materials, that computer images of CSAM will be retained by the collector indefinitly, and that these individuals may store their collections on moveable media or third party image storage sites. See Search Warrant Affidavit paragraph 9, Subsection E. Despite presenting these statements to the issuing magistrate as being truthful, Agent Lorenzen knew at the time she prepared her search warrant application that it would be "very, very common" for a search of the May home and electronics to not discover CSAM or CSAM artifacts. See Arraignment/Detention Hearing Transcript, page 63, lines 24-25 and page 64, lines 1-3. Thus, Agent Lorenzen requested a search warrant for possession of child pornography knowing that the suspect's home and electronics would very likely not contain the sought after contraband. The dangers in issuing warrants for possession of CSAM for residences in which CSAM would "very, very commonly" not be found are self-evident and subject to abuse.

Had Agent Lorenzen's true beliefs been part of the affidavit used to secure the warrant to search the May home, they would have "been of sufficient probative importance to the [probable cause] inquiry so that, as a minimum, further fruitful investigation would have occurred. In such case the warrant will be invalid and the resulting search unlawful." See US v. Davis, 714 F.2d 896 at 900.

Also critical to the finding of probable cause is the four month gap between the alleged CSAM activity on kik and the issuance of the search warrant for the May residence.[13] At the time of Agent Lorenzen's request to search the May home it was well established Fourth Circuit case law that a search warrant application for CSAM related crimes submitted months after underlying activity was generally immuned from staleness claims if an affront included in their probable cause affidavit sworn statements that (1) child pornographers rarely, if ever, dispose of their sexually illicit materials; and (2) that deleted computer files can be recovered by law enforcement through a forensic examination. See Richardson, Bosyk, Ebert, Sanders, and Kruegar.

The instant case shares some similarities with the relevant precedential cases but differs remarkably in that the corrected affidavit in the May case — stripped of its falsities and supplemented with the omissions — satisfies neither condition required to save it from being stale. Instead, the corrected affidavit avers nearly the opposite of what the Fourth Circuit has deemed necessary of CSAM search warrant applications submitted months after the alleged underlying activity.

With the affidavit corrected, the inferential bridge the issuing magistrate took to a finding of probable cause to authorize a search of the May home no longer exists. As the Fourth Circuit reasoned in Bosyk, the facts of that affidavit allowed the issuing magistrate to infer the suspect was a collector of CSAM and further allowed the magistrate to infer the suspect likely downloaded, stored, and kept CSAM since people with an interest in child pornography tend to hoard their materials and retain them for a long time. See US v. Bosyk, 933. F.3d 331 - 332.

Such inferances are impermissable in the instant case as the conclusion any magistrate

would seek to infer has already been established by the affiant— a search of the May home, electronics, and cloud accounts would very, very commonly result in the discovery of no CSAM or CSAM artifacts. Furthermore, arguments based on whether the affidavit establishes that a person fits the collector profile "misfocus the inquiry, which is whether there [is] reasonable cause to believe" CSAM files will be found on devices inside the target residence. US v. Hay, 231 F.3d 630, 636 (9th Cir. 2000). Based on the facts of the corrected affidavit, it would be highly unlikely to find such contraband.

But as the Krueger decision noted, the likelyhood— or in this case unlikelyhood— of an individual to collect and retain CSAM is one of two reasons evidence of child pornography possession could be found months after the alleged activity occured. The Fourth Circuit reasoned, based on the agent's affidavit, that even if Krueger tried to delete CSAM months earlier law enforcement would be able to recover the files. Krueger, 24-4328 at 10. Tellingly, in the instant case, Agent Lorenzen's original affidavit made no mention of law enforcement's

ability to recover deleted files suggesting that even the government didn't believe such boilerplate language — or the inferences that could be drawn from it — deserved inclusion. Regardless, the corrected affidavit makes clear what was implied: a forensic search of a suspect's devices and cloud accounts would very, very commonly result in the discovery of no CSAM artifacts. Thus, unlike in the previously mentioned cases, the only inference one can draw from the corrected affidavit is that any deleted computer files are highly unlikely to be recovered.

## CONCLUSION

In sum, Agent Lorenzen acted with at least reckless disregard for the truth when she included material falsities and omitted material facts in her probable cause affidavit in support of a search warrant for the May residence. Agent Lorenzen misled the issuing magistrate into believing there was probable cause the Target Individual was a collector of CSAM who would retain images of child pornography and rarely, if ever dispose of his cache of illicit

materials. In reality, Agent Lorenzen knew it to be true that Mr. May's home, electronics, and cloud accounts would very, very commonly not contain any CSAM or CSAM artifacts.

In evaluating the corrected affidavit, no magistrate would — unless acting as a rubber stamp for law enforcement — issue a search warrant for the chief evil in which the Fourth Amendment protects against when the affidavit states the odds of finding the sought after contraband, or recovering artifacts thereof, are so slim. Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place. This requirement must not become a mere form of words. To allow law enforcement to present affidavits to a magistrate built upon untruthful averments about the likelyhood of discovering contraband in a target location would eviscerate the Fourth Amendment protections requiring a truthful showing[14] of probable cause.

Put plainly, the corrected affidavit in the instant case provides no substantial basis to believe the May home, electronics, or cloud accounts would contain evidence of CSAM possession. Additionally, the corrected

affidavit fails to comply with Fourth Circuit precedent required to overcome staleness concerns.

With each omission added and falsity removed, Agent Lorenzen's affidavit went from averring a near certainty of finding CSAM to a probability which merged into a possibility and faded into a chance. The Fourth Amendment demands more. Search warrants with such a substantial risk of failure are exactly the ones in which probable cause never existed.[5]

Based on the foregoing, Mr. May request this Court hold a Franks Hearing, require Agent Lorenzen to testify at this hearing, and suppress all evidence, physical and digital, obtained or derived from, through or as a result of the unlawful search and seizure of any items from the May residence on August 5, 2024.

Respectfully Submitted,

Robert John May III

## FOOTNOTES

1. Kik is a smartphone messaging application based out of Los Angles, California.

2. Despite claiming cloud-based systems increased the likelyhood of search warrants recovering no child pornography or child pornography artifacts, Agent Lorenzen later confirmed her testimony was that it was "very, very common" to execute a search warrant on cloud storage accounts and discover no child pornography or artifacts thereof.

3. The Fourth Circuit held a five month delay between the underlying activity and the issuance of a search warrant was not stale when the agent's affidavit described the tendency of "individuals who possess or access with intent to view child pornography" to collect such material and hoard it for a long time. Such oversment, the court stated, allowed the magistrate to infer Bosyk likely downloaded, stored, and kept child pornography.

4. The Fourth Circuit held the agent's affidavit provided probable that was not stale when the affidavit included "information about the habits of individuals who create and possess child pornography

and the ability of law enforcement to recover images stored on and deleted from digital media.

5. The Fourt Circuit held that a 9 month delay did not preclude a finding of probable cause due to staleness when the affidavit conveyed (1) the tendency of individuals who intentionally access to collect child pornography, and (2) the materials electronic nature causing evidence of collection to be recoverable long after its deletion. The court reasoned such averments allowed the magistrate to infer CSAM would be located in the defendant's home months later.

6. The Fourth Circuit held that the agent's affidavit provided the magistrate with two substantial basis for concluding a search of the defendant's home would uncover evidence of wrongdoing: (1) the collector profile which allowed the magistrate to infer the defendant collected and retained CSAM and (2) the ability of law enforcement to retrieve deleted CSAM.

7. See Richardson, Bosyk, Ebert, Sandas, and Krueger. All five published Fourth Circuit

opinions on child pornography and staleness uphold the warrant in question due to an agent's sworn statements in an affidavit that describe (1)the tendency of child pornographers to rarely, if ever, dispose of their CSAM and (2) the ability of law enforcement to retrieve deleted data.

8. Agent Lorenzo's paragraph 9, subsection E averment is boilerplate language designed to meet all of law enforcement's needs. Given her June 12, 2025 testimony, it is clear this "expert" portion of the affidavit was not drafted with the facts of this case or the target individual in mind.

9. If it would be "very, very common" for the suspect to not have a collection of child pornography, then these statements are mere puffery designed to give an appearance of substance.

10. See Richardson, Bosyk, Ebert, Sanders, and Krugar.

11. Probable cause exists when there is a fair probability that contraband or evidence of

a crime will be found in a certain place. Agent Lorenzen's testimony that a search of the May home would very, very commonly not contain child pornography or artifacts of child pornography defeats probable cause.

12. Part of the probable cause determination is whether or not the information supporting the affidavit is stale. Agent Lorenzen's omissions render the underlying information in her probable cause affidavit stale.

13. The amount of time between the alleged CSAM activity on KK and the issuance of a search warrant for the May residence is comparable to the delay in the Richardson decision.

14. The facts within the probable cause affidavit must be truthful in the sense that the information put forth must be believed or appropriately accepted by the affiant as true.

15. See US v. Webber, 923 F.2d 1338 at 1334, 1335