IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 3:25-cr-778-CMC |
| | ) | |
| vs. | ) | |
| | ) | |
| **ROBERT JOHN MAY, III,** | ) | |
| a.k.a. "joebidennnn69," | ) | |
| a.k.a. "Eric Rentling" | ) | |

### Government's Motion in Limine and 404(b) Notice

The Government submits this motion in limine asking the Court to make two rulings:

1. That evidence of the uncharged child pornography files distributed from May's Kik account are admissible: (1) as inextricably intertwined evidence, (2) in the alternative, as evidence of other "child molestation" within the meaning of Fed. R. Evid. Rule 414(a), and (3) in the alternative, pursuant to Fed. R. Evid. Rule 404(b) to show intent, plan, knowledge, and lack of mistake, accident, or surprise.

2. That under Fed. R. Evid. Rules 1006 and 611(a), the Government be allowed use summary charts and demonstrative aids to summarize voluminous evidence and assist the jury in considering evidence related to May's activity on Kik, his devices, and his accounts.

## I.     Relevant History

On May 27, 2024, a tip was sent by Kik, a social-media platform, to the National Cetner for Missing and Exploited Children (NCMEC), which indicated that over a five-day period in March and April 2024 a Kik account with the username "joebidennnn69" distributed child pornography videos to other Kik users 50 times.  A state search warrant showed the joebidennnn69 account was accessing the internet from May's home address.

State and federal search warrants were obtained for the contents of the joebidennnn69 Kik account and a federal search warrant for a search of May's home.  From May's home, thirty-five electronic devices were seized, and subsequent federal search warrants were granted for relevant devices.  Apart from those searches, agents gathered a large volume of evidence from Facebook,

Google, Verizon, AT&T, Mega Telegram, Green Dot, i360, PayPal, and AirBnB. Records from Kik, devices, and those providers will show that May operated the joebidennnn69 Kik account.

Search warrant production revealed that the joebidennnn69 Kik received, possessed, and distributed a large volume of child pornography. The videos showed infant and toddler children being subjected to severe forms of sex abuse; some of the videos included physical violence and abuse involving animals. As for the volume of content shared:

- Child pornography videos were distributed 479 times by the joebidennnn69 account to other Kik users, both in the private messages and in group chats.

- Within those 479 distributions, there were 220 unique child pornography videos, meaning that the account user distributed many of the videos more than once.

- Of those distributions, the joebidennnn69 account distributed videos 21 times in group chats and 458 times to individual users.

- IP history for the child pornography distributions implicated May:

  - 432 distributions resolved to May's home IP address.

  - 19 distributions resolved to May's Verizon cell phone.

  - 28 distributions resolved to a Virtual Private Network (VPN) address, and there is evidence that May's phone had a VPN application.

On June 10, 2025, May was charged by a federal grand jury with 10 counts of child pornography distribution. ECF No. 3 (Indictment). Each of the 10 counts is associated with the distribution of single video on a single occasion from the joebidennnn69 Kik account. Specifically:

Count 1: a video file ending in "69c0" distributed April 3, 2024;
Count 2: a video file ending in "5841" distributed April 3, 2024;
Count 3: a video file ending in "13c8" distributed April 3, 2024;
Count 4: a video file ending in "7018" distributed April 3, 2024;
Count 5: a video file ending in "3a7a" distributed April 1, 2024;
Count 6: a video file ending in "2928" distributed April 1, 2024;
Count 7: a video file ending in "73d2" distributed April 1, 2024;
Count 8: a video file ending in "63e8" distributed April 1, 2024;
Count 9: a video file ending in "d8e0" distributed April 3, 2024; and
Count 10: a video file ending in "eaab" distributed April 4, 2024.

Together, the 10 files that support a charged count are referred to as the "Charged Files." A review of evidence related to those files shows a consistent pattern. The files are videos depicting toddler-age children being sexually abused by adults, including adult men ejaculating on the face and in the mouths of toddler-age children, coercing the children to perform oral sex on the adult men, adults performing oral sex on the children, and adult men penetrating the children. They are videos between 14 seconds and 1 minute and 58 seconds in length. May distributed the files across a narrow date range—between April 1, 2024, and April 4, 2024—and he sent each from the "joebidennnn69" Kik account to another Kik user. For each distribution he accessed the internet from an IP address associated with either his cell phone or his home Wi-Fi, both of which are password protected.

Beyond those 10 files, the additional child pornography recovered from the joebidennnn69 account are referred to as the "Uncharged Files." These files follow the same pattern as the Charged Files, and in some cases, they are the same file. That is, May distributed many of the Charged Files on occasions beyond what is described in the indictment. That is true for the files listed Counts 1, 4, 5, 8, 9, and 10. And for the Uncharged Files he used the same platform, the same account, often the same files, he trafficked them to the same or similar users, on the same dates, and he accessed the internet through the same IP addresses. They are videos between two seconds and two minutes in length. Apart from their being separate distributions, it is difficult to find anything that distinguishes the Uncharged Files from the Charged Files.

## II.     Evidence of the Uncharged Files is Admissible

At trial, the Government will seek to introduce evidence related to Uncharged Files. A law-enforcement witness will testify about the files and their recovery. But the Government will not seek to admit images or videos of the Uncharged Files. Testimony about the Uncharged Files is admissible at trial for three independent and sufficient reasons. First, it is admissible as inextricably intertwined evidence. Second, it is alternatively admissible under Fed. R. Evid. Rule 414(a) as evidence of other

"child molestation" within the meaning of the rule.  Alternatively, if the Uncharged Files are not intrinsic and inextricably intertwined, the evidence is admissible under Fed. R. Evid. Rule 404(b) to show intent, plan, knowledge, and lack of mistake, accident, or surprise, and other permissible bases provided by the rule.

### a. First, the Uncharged Files are Admissible as Intrinsic Evidence Because they are Inextricably Intertwined to the Charged Files

The Government may introduce evidence of child pornography files beyond the specific files identified in an indictment if those other files are "inextricably intertwined" with the charged offense. *United States v. Ebert*, 61 F.4th 394 (4th Cir. 2023).  Generally, evidence of other acts may be directly admitted if either (1) the evidence "constitutes a part of the transaction that serves as the basis for the criminal charge," or (2) the government finds it necessary in order "to offer a coherent and comprehensible story regarding the commission of the crime." *Id*.

"Bad acts are intrinsic to the charged offense 'when they are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged.'"  *United States v. Denton*, 944 F.3d 170, 185-86 (4th Cir. 2019) (affirming admission of other bad acts where they were related to the charged conduct).  Bad acts are "inextricably intertwined with the evidence regarding the charged offense if they form an integral and natural part of the witness's accounts of the circumstances surrounding" the charged offense.  *Id*. at 186 (cleaned up).

"Evidence of other bad acts is intrinsic if, among other things, it involves the same series of transactions as the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Webb*, 965 F.3d 262, 266 (4th Cir. 2020) (citing *United States v. Sutherland*, 921 F.3d 421, 429 (4th Cir. 2019)) (cleaned up).  Where "testimony is admitted as to acts intrinsic to the crime charged, and is not admitted solely to demonstrate bad character, it is admissible." *United States v. Chin*, 83 F.3d 83, 88 (4th Cir. 1996); *citing United States v. Allen*, 960 F.2d 1055, 1058, (D.C. Cir. 1992).

The limitation Rule 404(b) imposes on the admissibility of other bad acts does not apply when the evidence is admitted as intrinsic evidence. *See Sutherland*, 921 F.3d at 430 (Rule 404(b) "does not affect the admission of evidence that is intrinsic to the alleged crime" (cleaned up)); *United States v. Otuya*, 720 F.3d 183, 188 (4th Cir. 2013). Accordingly, the Fourth Circuit has upheld the admission of uncharged child pornography images without conducting a Rule 404(b) analysis when those images helped "complete the story behind the charged offense." *United States v. Brizuela*, 962 F.3d 784, 795 (4th Cir. 2020). That is because Rule 404(b) is "only applicable when the challenged evidence is extrinsic, that is, separate from or unrelated to the charged offense." *Brizuela*, 962 F.3d at 795 (citing *United States v. Bush*, 944 F.3d 189, 195 (4th Cir. 2019)) (cleaned up). "In contrast, acts that are a part of, or intrinsic to, the alleged crime do not fall under Rule 404(b)'s limitations on admissible evidence." *Id*.; *quoting Chin*, 83 F.3d at 87–88.

Here, because the Uncharged Files are "a part of the transaction that serves as the basis for the criminal charge," evidence related to uncharged distributions is inextricably intertwined with charged conduct. *Denton*, 944, F.3d at 185-86. The Uncharged Files recovered from the joebidennnn69 Kik account are a part of the "same series of transactions as the charged offense." *Webb*, 965 F.3d at 266. The Uncharged Files were received, possessed and distributed by May on the same platform using the same account and in the same conversations as the charged conduct. For example, May's distribution that supports Count 6 came in a conversation on another Kik user, ufudnene648, on April 1, 2024. *See* Att. H – Timeline by Count Summary Chart at 2. Between 4:41 PM and 4:47 PM, the joebidennnn69 account distributed eight Uncharged Files and one Charged File, only one of which supported a charged count. *Id*. Across the six-minute conversation, ufudnene648 in turn sent the joebidennnn69 account six Uncharged Files. *Id*. Their conversation mentioned a Kik

group they were in, and whether May wanted ufudnene648 to send certain types of videos. The Charged File in Count 6 is completely intertwined with Uncharged File conduct:

| Date/Time EDT | Sender | Source | Recipient | Message | IP Address |
|---|---|---|---|---|---|
| 4/1/2024 16:41:15 | ufudnene648_a1e | Kik Gallery | joebidennnn69_rfg | bd54978c-217c-46ac-9c49-7c4a29b4bade | - |
| 4/1/2024 16:41:33 | Kik Application | MAY's Android SM-G781U1 | MAY's Android SM-G781U1 | Kik App Notification | - |
| 4/1/2024 16:41:40 | ufudnene648_a1e | Kik Chat | joebidennnn69_rfg | I left that group, it was dead | - |
| 4/1/2024 16:41:43 | joebidennnn69_rfg | Kik Gallery | ufudnene648_a1e | 7b8f6782-cbe6-4e81-9c06-c7443aed8083 | 162.234.188.43 |
| 4/1/2024 16:41:43 | joebidennnn69_rfg | Kik Gallery | ufudnene648_a1e | 86dd0b1a-2ea7-4c31-afcb-4915a2d7872c | 162.234.188.43 |
| 4/1/2024 16:41:43 | joebidennnn69_rfg | Kik Gallery | ufudnene648_a1e | 9c604096-46fa-4bb8-b6c7-fcdabbbb0c1d | 162.234.188.43 |
| 4/1/2024 16:41:43 | joebidennnn69_rfg | Kik Gallery | ufudnene648_a1e | f4411d92-3567-476e-a7a9-ffc31be3a726 | 162.234.188.43 |
| 4/1/2024 16:41:46 | ufudnene648_a1e | Kik Chat | joebidennnn69_rfg | The kik one we were in | - |
| 4/1/2024 16:42:22 | ufudnene648_a1e | Kik Gallery | joebidennnn69_rfg | 77fc2f64-375c-4088-a4b2-fd9e7d52eb3a | - |
| 4/1/2024 16:42:34 | ufudnene648_a1e | Kik Gallery | joebidennnn69_rfg | 46555f0c-b798-430d-94d8-008bfdf160e4 | - |
| 4/1/2024 16:42:47 | ufudnene648_a1e | Kik Gallery | joebidennnn69_rfg | 708c85e5-a23f-4ab4-b51f-4d685de9c53a | - |
| 4/1/2024 16:43:06 | ufudnene648_a1e | Kik Gallery | joebidennnn69_rfg | 7e3bcc3f-6326-48d4-bc61-934c469fed8a | - |
| 4/1/2024 16:43:28 | ufudnene648_a1e | Kik Gallery | joebidennnn69_rfg | cd7a6c14-42a8-44dd-8ec6-cd4b6449980 | - |
| 4/1/2024 16:43:50 | joebidennnn69_rfg | Kik Gallery | ufudnene648_a1e | de40fa06-5f2b-422d-8192-a69c0cf6e351 | 162.234.188.43 |
| 4/1/2024 16:43:51 | joebidennnn69_rfg | Kik Gallery | ufudnene648_a1e | 69a60671-f343-47b5-a818-c11285ab5a71 | 162.234.188.43 |
| 4/1/2024 16:43:51 | joebidennnn69_rfg | Kik Gallery | ufudnene648_a1e | 85f989b3-40c2-4790-a36f-f590f7144383 | 162.234.188.43 |
| 4/1/2024 16:43:51 | joebidennnn69_rfg | Kik Gallery | ufudnene648_a1e | File -2928 (Count 6) | 162.234.188.43 |
| 4/1/2024 16:44:26 | Kik Application | MAY's Android SM-G781U1 | MAY's Android SM-G781U1 | Kik App Notification | - |
| 4/1/2024 16:44:40 | joebidennnn69_rfg | Kik Gallery | ufudnene648_a1e | a28e0f15-8deb-4e11-9de1-0d443366507d | 162.234.188.43 |
| 4/1/2024 16:47:06 | ufudnene648_a1e | Kik Chat | joebidennnn69_rfg | Want me to send gay stuff too? I have a few of those, still have another 300ish vids, I'll keep sending if you send | - |
| 4/1/2024 16:47:24 | ufudnene648_a1e | Kik Gallery | joebidennnn69_rfg | e2bfef53-a9fa-4b44-b2dc-ded6172471ba | - |
| 4/1/2024 16:47:38 | Kik Application | MAY's Android SM-G781U1 | MAY's Android SM-G781U1 | Kik App Notification | - |

Because the receipt and distribution of these Uncharged Files are a part of a single criminal episode, they are inextricably intertwined with the charged conduct in Count 6. *Denton*, 944, F.3d at 185-86. The same is true for the rest of the files, charged and uncharged. They are all a part of a single five-day child pornography spree.

While the above is sufficient, presenting evidence of the Uncharged Files is also necessary in order "to offer a coherent and comprehensible story regarding the commission of the crime." *Id.* There is no way to tell the story of the charged distributions if the Government is required to hide from the jury the context and the dialogue supports the charged counts. The Uncharged Files are not some far off, different, or other bads acts. They are the same acts from the same conversations involving the same users and the same files on the same days. They were recovered through the same

legal process by the same agents in the same investigation. They are necessary to complete the story because they are story of the charged distributions. Evidence of both is necessary "to offer a coherent and comprehensible story regarding the commission of the crime." *Id.* The Charged Files cannot be divorced from their context.

Fourth Circuit caselaw supports this request. *See, e.g.*, *Ebert*, 61 F.4th 394; *Webb*, 965 F.3d 262. The admission of the Uncharged Files is for the approved purposes described above, not to "solely demonstrate bad character." *Chin*, 83 F.3d 83. And because that evidence is intrinsic, the restrictions imposed by Rule 404(b) have no application here. *Sutherland*, 921 F.3d at 430. Evidence of the Uncharged Files should be admitted as they represent inextricably intertwined evidence.

### b. Second, in the alternative, the Uncharged Files are admissible as evidence of other "child molestation" within the meaning of Rule 414(a)

In addition, under Fed. R. Evid. Rule 414(a), "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant." In turn, "child molestation" is defined to include "any conduct prohibited by 18 U.S.C. Chapter 110." Fed. R. Evid. Rule 414(d)(2)(B). Chapter 110 of Title 18 begins at § 2251 and continues through § 2260A. That section includes § 2252A(a)(5)(B) – Possession of Child Pornography and § 2252A(a)(2) – Receipt and Distribution of Child Pornography.

Here, May has been accused of "child molestation" within the meaning of the rule in that he has been indicted on 10 counts of child pornography distribution in violation of § 2252A(a)(2) and (b)(1). ECF No. 3 (Indictment). The Uncharged Files represent other instances of "child molestation" within the meaning of the rule, because they are evidence that May possessed child pornography in violation of § 2252A(a)(5)(B) and that he received and distributed such files in violation of § 2252A(a)(2). Evidence of this conduct is relevant for reasons discussed in the section above. Accordingly, evidence of the Uncharged Files is admissible under Rule 414(a).

The Fourth Circuit has approved of the admission of additional evidence of child molestation in federal child pornography prosecutions. *See, e.g.*, *United States v. Hoover*, 95 F.4th 763, 771-72 (4th Cir. 2024) (approving district court's admission of testimony regarding defendant's uncharged "child molestation" in a prosecution for production and possession of child pornography); *United States v. Arce*, 49 F.4th 382, 394 (4th Cir. 2022) (approving admission of uncharged child pornography distributions in prosecution for receipt and possession of child pornography). Moreover, the Uncharged Files "do[] not involve conduct any more sensational or disturbing than the crimes with which [the defendant] [is] charged." *United States v. Byers*, 649 F.3d 197, 210 (4th Cir. 2011) (quoting *United States v. Boyd*, 53 F.3d 631, 637 (4th Cir. 1995)). Just the opposite. It's the same conduct May is accused of in the Indictment. Evidence of the Uncharged Files not more sensational or disturbing than the files listed in the Indictment in any way.

Evidence of the Uncharged Files is admissible under Fed. R. Evid. Rule 414(a).

### c. Third, in the alternative, the Uncharged Files are admissible under Rule 404(b)

In the alternative, if the Uncharged Files are not intrinsic and inextricably intertwined, evidence related to these files should be permitted pursuant to Fed. R. Evid. Rule 404(b), which excludes the admission of "other crimes, wrongs, or acts" (i.e., uncharged bad acts) to prove conformity therewith (propensity evidence). Fed. R. Evid. 404(b). That same rule, however, also expressly allows for the admission of other bad acts to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b).[1] To admit evidence of uncharged bad acts under Rules 404(b) and 403, the Fourth Circuit has held that it must satisfy the following criteria:

---

[1] Fed. R. Evid. Rule 404(b)(3) requires the Government provide the Defendant written notice if it intends to offer 404(b) evidence at trial. Through his filing, the Government is providing May that notice. The purposes for which the Government seeks to use this evidence, and the reasons supports those purposes, are described in Section II of this filing.

(1) The evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant. ... (2) The act must be necessary in the sense that it is probative of an essential claim or an element of the offense. (3) The evidence must be reliable. And (4) the evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process.

*United States v. Bell*, 901 F.3d 455, 465 (4th Cir. 2018) (citing *United States v. Queen*, 132 F.3d 991, 995 (4th Cir. 1997)).  These principles are well settled.  To be admissible under Rule 404(b), evidence of other acts, crimes or wrongs, must satisfy the requirements set forth in *United States v. Huddleston*, 485 U.S. 683 (1988).  In determining the admissibility of prior act evidence, the Court should first decide if the evidence is offered for a proper purpose – "one other than to prove the defendant's bad character or criminal propensity."  *Id*. at 683.  Second, the Court should decide whether the evidence is relevant to some disputed issue in the trial.  *Id*.  Third, the court should assess whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice its admission would create.  *Id*.

"Unfair prejudice" in the context of Rule 403 context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.  Fed. R. Evid. 403 Advisory Committee's note.  If requested to do so, the court should give an appropriate limiting instruction.  *Huddleston*, 485 U.S. at 683.  Before admitting evidence pursuant to Rule 404(b), the Court need not hold a Rule 104(a) evidentiary hearing but instead must make only a preliminary finding that the evidence is *not* being admitted solely to prove character, and a jury could reasonably conclude that "the act occurred and that the defendant was the actor."  *Id*. at 689 (stating that a preliminary finding by a preponderance of the evidence is not required).

Here, evidence of the Uncharged Files is admissible under Rule 404(b) for several permitted purposes.  First, they are admissible to show May had the requisite intent or mens rea to commit the charged offenses.  It also shows May's preparation and plan through his repeated and persistent

receipt, possession, and distribution of child pornography.  It further shows his knowledge and that his conduct was knowing and not inadvertent.

Identity is also shown through the Uncharged Files.  May repeatedly carried very specific conversations and activity from the joebidennnn69 chats to his other personal, password-protected devices.  For example, on April 3, 2024, the joebidennnn69 account received a message from another Kik user that the user had "Hebes and ephe" files available.  *See* Att. G – Attribution Excerpt Summary Chart at 1.  (That data was recovered from Kik and captured May's conduct on his phone.)  May then searched from his laptop "hebe meaning" and "hebephile meaning," after which he visited the Wikipedia page for Hebephilia.[2]  *Id*.  There are numerous other instances related to Uncharged File conduct where May took very specific conversations and activity from the joebidennnn69 Kik account onto his private devices, including his password-protected cell phone and laptop.  *Id*. at 2-9.  The Uncharged File conduct is relevant to show identity in that they show May controlled the joebidennnn69 Kik account.

Finally, under Rule 404(b), the Uncharged Files show lack of mistake and lack of accident – the nature and context of the conversations show May's clear design and intent to obtain and distribute child pornography.  Moreover, when a defendant affirmatively denies having the requisite knowledge or intent by proffering an innocent explanation for his actions, the Government should be entitled to rebut that argument with Rule 404(b) evidence.  *United States v. Sanchez*, 118 F.3d 192, 196 (4th Cir. 1997) ("A not-guilty plea puts one's intent at issue and thereby makes relevant evidence of similar prior crimes when that evidence proves criminal intent.")  For these reasons, the Uncharged Files are admissible under Rule 404(b).

---

[2] Hebephilia refers to a sexual preference for children in early adolescence, typically between the ages of 11 and 14.  *See Hebephilia*, Psychology Today, https://www.psychologytoday.com/us/basics/hebephilia (Last Accessed Sept. 16, 2025)

The Fourth Circuit has repeatedly approved of the admission of such conduct under this rule. *See, e.g.*, *United States v. Nanda*, 178 F.3d 1287 (4th Cir. 1999) (unpublished) ("the additional photographs and chat-room dialogues were relevant and necessary because they tended to show Nanda's intent, knowledge, and absence of mistake"); *United States v. Baker*, 2009 WL 3698577 (4th Cir. 2009) (unpublished) (affirming admissibility of uncharged child pornography files in trial of defendant charged with possession of child pornography); *United States v. Whorley*, 550 F.3d 326, 337 (4th Cir. 2008) (evidence of defendant's prior child pornography conviction was admissible "to establish that Whorley received the charged images knowingly, not by accident or mistake" where knowing receipt was an issue at trial). The same is true with other courts. *See*, *e.g., United States v. Schene*, 543 F.3d 627, 643 (10th Cir. 2008) (affirming the admission under 404(b) uncharged child pornography to show knowledge and intent, noting the district court's effective limiting instruction); *United States v Hatfield*, 358 Fed. Appx. 692, 695 (7th Cir. 2009) ("Because Hatfield wanted the jury to believe he was ignorant about the child pornography on his computer equipment and storage media, the district court reasonably determined that Barnes's limited description of the uncharged materials was relevant" to show knowledge, intent, motive or absence of mistake); *United States v. Vosburgh*, 602 F.3d 512, 538 (3rd Cir. 2010), cert. denied, 31 S.Ct. 1783 (2011) (finding no abuse of discretion where the district court admitted uncharged child erotica images under 404(b) because they were relevant to show knowledge); *United States v. Keith*, 2011 WL 4565447, at *3 (7th Cir. Oct. 4, 2011) (unpublished) (uncharged child pornography files relevant to establish defendant's knowledge and lack of mistake); *United States v. Brown*, 862 F.2d 1033, 34-66 (3d Cir. 1988) (affirming admission under 404(b) of uncharged child pornography videos found in defendant's home along with the video he was charged with receiving, as well as his correspondence with the company); *United States v. Eckhardt*, 466 F.3d 938, 946 (11th Cir. 2006) (quoting *United States v. Queen*, 132 F.3d 991, 995

(4th Cir. 1997)) (cleaned up) (404(b) is an inclusionary rule, allowing evidence of other crimes or acts to be admitted, except that which tends to prove only criminal disposition.).

In short, if the Court concludes the Uncharged Files are not intrinsic and intertwined evidence, because the Government seeks to admit such evidence for a proper purpose – including to show May's knowledge, intent, identity, and lack of mistake and lack of accident, all of which are at issue in this trial – evidence of the Uncharged Files is admissible under Rule 404(b).[3]

### III.     Summary Charts and Demonstrative Aids Should be Permitted to Assist the Jury

At trial the Government plans to use summary charts and demonstratives to summarize voluminous evidence and to aid the jury in understanding evidence.[4]   The Government seeks the

---

[3] In addition, May may inject yet another reason that the Uncharged Files should come in as the trial unfolds.  Rule 404(b) does not permit propensity evidence unless a defendant has put his own character at issue. *United States v. Davis*, 657 F.2d 637, 639 (4th Cir. 1981).  When determining whether a defendant has placed his own character at issue and opened the door to a character-based response from the Government, the Fourth Circuit has explained:

> "Particularly where, as here, a defendant in a criminal case by her own testimony and that of others has deliberately sought as the primary means of defense to **depict herself as one whose essential philosophy and habitual conduct in life is completely at odds with the possession of a state of mind requisite to guilt** of the offense charged, that defendant may be considered in effect to have forfeited any protection that the first sentence of the Rule might otherwise have provided against the type of "other act" evidence here challenged."

*United States v. Johnson*, 634 F.2d 735, 737 (4th Cir. 1980) (emphasis added); see also *United States v. Neal*, 78 F.3d 901, 904 (4th Cir. 1996) (in rejecting a challenge to witness testimony that the defendant was a high-level drug dealer and a kingpin, "most [of the statements] were elicited by his own attorney from a government witness during cross-examination").  That is, if May injects a character-based defense, that would be a fourth basis to admit evidence of the Uncharged Files.

[4] The Government intends to use such tools in its opening statement, closing argument, and other times during the trial, as permitted under the rules described below.  The purpose of an opening statement is to acquaint the jury with the substance and theory of the case and to outline forthcoming evidence so that jurors may intelligently follow the evidence as its presented.  Closing argument is a summation of evidence already admitted so that parties may assist jurors in connecting facts with the law.  Courts permit charts and demonstratives to assist juries in understanding the proof they are about to hear or have heard.  *See United States v. Sampler*, 368 Fed. App'x 362, 365, 367 (4th Cir. 2010) (approving government's use of "an illustrative chart featuring [photographs] in its opening statement"); *United States v. DePeri*, 778 F.2d 963, 978 (3d Cir. 1985).

Court's approval to do so through the following draft exhibits, each of which the Government shared

with May at the meet and mark:

> Att. A – Chats Summary Charts
> Att. B – Distributions Summary Chart
> Att. C – Map of Distributions Summary Chart
> Att. D – Distributions by IP Summary Chart
> Att. E – IP Collision Summary Chart
> Att. F – May Phone Kik Activity Summary Chart
> Att. G – Attribution Excerpt Summary Chart
> Att. H – Timeline by Count Summary Chart

### 1. Use of charts under Rule 1006 and Rule 611(a) to summarize voluminous evidence and aid the jury.

The Federal Rules of Evidence generally provides two ways to introduce charts and

summaries.

First, Rule 1006 allows for "the admission of charts into evidence that serve "*as a surrogate*

for underlying voluminous records that would otherwise be admissible into evidence, thereby

reducing the volume of written documents that are introduced into evidence." *United States v.*

*Oloyede*, 933 F.3d 302, 310 (4th Cir. 2019) (emphasis in the original) (cleaned up).   Rule 1006

provides the following:

> "The contents of voluminous writings, recordings, or photographs which cannot
> conveniently be examined in court may be presented in the form of a chart,
> summary, or calculation. The originals, or duplicates, shall be made available for
> examination or copying, or both, by other parties at reasonable time and place. The
> court may order that they be produced in court."

Fed. R. Evid. Rule 1006.  "The purpose of this Rule is to reduce the volume of written documents

that are introduced into evidence by allowing in evidence accurate derivatives from the voluminous

documents." *Janati*, 374 F.3d at 272.  "To comply with this Rule, therefore, a chart summarizing

evidence must be an accurate compilation of the voluminous records sought to be summarized" and

"the records summarized must otherwise be admissible in evidence." *Id*.  "While the Rule does not

require that the underlying documentation actually be introduced into evidence, it does require that

the documents be made available to the opposing party for examination and copying at a reasonable time and place." *Id*. at 273.  Finally, because "the underlying documents need not be introduced into evidence, the chart itself is admitted as evidence in order to give the jury evidence of the underlying documents." *Id*.

Second, Rule 611(a) permits the admission of summary charts "to facilitate the presentation and comprehension of evidence already in the record."  *United States v. Simmons*, 11 F.4th 239, 262 (4th Cir. 2021) (quoting *Janati*, 374 F.3d at 273).[5]  Rule 611(a) charts "are distinguishable from" Rule 1006 charts.  *Janati*, 374 F.3d at 273 (discussion comparing charts under the two rules).  While both are admissible, the key distinction is that Rule 1006 summaries are *evidence themselves* of information from other sources not in evidence; Rule 611(a) summaries are *illustrations* of testimony, documents, or other sources of admissible evidence already before the jury.  That is, the purpose of the Rule 1006 is to provide an alternative means of proving the content of voluminous records and the purpose of Rule 611(a) is to present a cohesive summary of evidence previously admitted.  Because they are used to help educate the jury, Rule 611(a) summaries are sometimes referred to as "pedagogical charts."  These pedagogical devices "may include witnesses' conclusions or opinions, or they may reveal inferences drawn in a way that would assist the jury."  *Janati*, 374 F.3d at 273.  For this reason, pedagogical summaries are often used to summarize the opinions of expert witnesses, drawing on authority under Fed. R. Ev. Rule 703 and 705.  *Id.*

## 2. Draft charts the Government seeks to use at trial to summarize voluminous evidence and aid the jury.

Here, at trial the Government intends to rely on Fed. R. Evid. Rules 1006 or Rule 611(a), as

---

[5] As the Fourth Circuit explained in *Simmons*, Rule 611(a) summary charts "may be admitted into evidence."  *Id.* at 262 n.12.  This remains so despite holdings of other circuits to the contrary and some suggestions in dicta in *Janati* and *Oloyede* that admission of 611(a) summaries might be disfavored.  As *Simmons* makes clear, reliance on such dicta is "misplaced," and the long-standing circuit rule—articulated in *United States v. Johnson*, 54 F.3d 1150 (4th Cir. 1995)—that 611(a) summaries are admissible evidence remains the law of the circuit.  *Id.*

identified below, to admit charts to serve as an alternative means to present voluminous records (Rule 1006) and to present a condensed summary of evidence previously admitted (Rule 611(a)).

As contemplated by the rules, the proposed charts represent the summary of voluminous evidence. This investigation generated 11,800 pages of discovery associated with the searches and legal processes described above. Beyond that, May's phone extraction is 71 GB of data and it generated more than 86,000 pages, his wife's phone (which did not contain evidence of the child pornography scheme) is 71 GB and it generated more than 80,000 pages, and his laptop extraction was another 440 GB and it generated more pages than the cell phones. Facebook records associated with the account in May's name and the name of Eric Rentling generated another 5,400 pages together. Many of the page counts above do not include media files recovered.

### a. Attachment A - Chats Summary Charts

First, under Rule 1006 the Government seeks to use summary charts to capture relevant chats the joebidennnn69 account exchanged with other Kik users around the time of each charged distribution. *See* Attachment A – Chats Summary Charts

At trial, the Government will move to admit a separate chat summary for each charged distribution. That is, for each charged count, the Government intends to admit the video distributed, a "storyboard" of screen grabs from the video, a redacted storyboard, and the chats, and one set of the same for each charged distribution.

These charts present the words May was exchanging with others during and in relation to the charged distributions. They condense a large volume of Kik records and data into readable and condense charts. The charts are designed to reduce the volume of written documents that will need to be brought before the jury. Their accuracy will be supported by witness testimony. They are therefore admissible under Rule 1006.

May informed the Government at the meet and mark that he objected to these chats on two

grounds: that they are prejudicial and that they confuse the issues.

### b. Attachment B – Distribution Summary Charts

Second, under Rule 611(a) the Government seeks to use a chart that will provide a narrative description of the Charged Files and their distributions. *See* Att. B – Distribution Summary Charts.

At trial, for each charged count, the Government intends to move to admit the original files (videos and screenshots of the charged child pornography) into evidence. A witness will describe the content of each Charged File, which in turn will then be reflected in this chart to aid the jury as the trial proceeds. This exhibit, therefore, will be an illustration of evidence already before the jury and will assist the jury, as provided for in Rule 611(a). Charts in a case such as this one are particularly important in that they will protect against the need to publish video and image content to the jury more than is necessary. Rule 611(a) allows such charts to be admitted.

May informed the Government at the meet and mark that he only objected to certain language in the charts, and that if that language is resolved, he would not object to the chart. The Government will review and consider May's requested changes.

### c. Attachment C – Map of Distributions Summary Chart

Next, under Rule 1006, the Government seeks to admit a two-page map that will show the location of users who received child pornography from the joebidennnn69 account during the operative time. *See* Att. C – Map of Distributions Summary Chart.

As support for the Rule 1006 summary, a law enforcement witness will testify that agents recovered the IP addresses of those who received child pornography from the account. Agents then determined the locations of those IP addresses. The result shows a prolific distribution scheme, which is the object of the indictment. Over a five-day period, May distributed child pornography to Kik users in 18 states and six countries. This chart condenses a large volume of Kik and IP records from numerous sources. The chart reduces that evidence into a reliable and condense chart, which Rule

1006 allows.

May informed the Government at the meet and mark that he had no objection to this exhibit.

### d. Att. D - Distributions by IP Summary Chart

Next, under Rule 1006, the Government seeks to admit a one-page summary that captures the volume of child pornography shared by the joebidennnn69 account across each of the six IP addresses that the account used. *See* Att. D – Distributions by IP Summary Chart.

As support for this chart, a law enforcement witness will testify that agents recovered IP session data in the voluminous records returned by Kik. Agents determined the IP address used for each of the 479 child pornography distributions. Of those, 432 distributions resolved to May's home Wi-Fi account, 19 to his personal cell phone, and 28 to a VPN (and there is evidence May had a VPN app on his phone). This chart condenses a large volume of Kik and IP records and prevents the jury from having to examine IP records for the 479 child pornography distributions individually. The chart is reliable and condense.

May informed the Government at the meet and mark that he had no objection to this exhibit.

### e. Att. E - IP Collision Summary Chart

Next, under Rule 1006, the Government seeks to admit a one-page summary that shows overlaps between May's legitimate accounts and the joebidennnn69 and Eric Rentling accounts. *See* Att. E – IP Collision Summary Chart.

As support, a law enforcement witness will testify that agents recovered customer/subscriber data, registration e-mail and phone numbers, IP session history, registration dates, and device information for 10 different applications and accounts associated with May. Common identifiers, subscriber information, devices, and IP sessions show the same person-controlled both May's legitimate accounts and the accounts associated with the child pornography scheme. This chart condenses a large volume of records from multiple providers and prevents the jury from having to

take up each separately.  The chart is reliable and condense, as provided for in Rule 1006.

May informed the Government at the meet and mark that he had no objection to the RJ May III Facebook account and the joebidennnn69 Kik account data being in the chart, but that he objected to the other accounts being included.  May's objection was that the other accounts are not relevant and that they confuse the issues.

### f.   Att. F - May Phone Kik Activity Summary Chart

Next, under Rule 1006, the Government seeks to admit a chart that shows the significant amount of Kik activity recovered from May's cell phone (rather than the Kik provider) during the time the joebidennnn69 account was active.  *See* Att. F – May Phone Kik Activity Summary Chart.

As support, a law enforcement witness will testify that agents reviewed an extraction of May's phone.  Data from different phone extraction subfolders shows a high level of Kik activity on May's phone during the 5-day window in which May is charged with distributing child pornography.  For example, May's phone received more than 450 alerts from the Kik app installed on his phone in those five days.  As for what appears to have been May's long-maintained defense—that the files were not recovered from his device—this chart also shows that May deleted the Kik application on April 4, 2024, after the child pornography files were distributed on the Kik application but before his phone was seized.  The chart is concise and will be supported by testimony.  It is the kind of chart supported by Rule 1006.

May informed the Government at the meet and mark that he had no objection to this exhibit.

### g.   Att. G - Attribution Excerpt Summary Chart

Next, under Rule 1006, the Government seeks to admit a summary that shows attributes the joebidennnn69 account to May by showing the same user controlled the joebidennnn69 account and May's personal devices during the operative window.  *See* Att. G – Attribution Excerpts Summary Chart.

As support, a law enforcement witness will testify that agents recovered data from the Kik account, May's cell phone, and May's laptop. Agents then placed relevant conduct on a single timeline and compared the activity. The evidence shows that the user of the joebidennnn69 account discussed certain specific activity on the Kik platform and then took the same activity to May's cell phone and his laptop. For example, as discussed in the 404(b) section above, on April 3, 2024, records from Kik show the joebidennnn69 account received a message from another Kik user that the user had "Hebes and ephe" files available. Att. G at 1. May then searched from his laptop "hebe meaning" and "hebephile meaning," after which he visited the Wikipedia page for Hebephilia (which shows the term references a sexual interest in 11- to 14-year-olds). *Id*. May's phone follow a similar pattern. For example, when joebidennnn69 discussed the Mega app, May's cell phone downloaded the Mega app and then received three Mega confirmation messages. Att. G at 2. The same is true for Telegram. Att. G at 3. The same is true for Session Private Messenger. Att. G at 4. There is more similar attribution. Att. G at 5-9. This chart summarizes voluminous data from multiple providers and devices, and it will be supported by witness testimony. This chart is the kind Rule 1006 allows.

May informed the Government at the meet and mark that he objected to certain language in the chart. The Government will review and consider May's requested changes.

### h. Att. H – Timeline by Count Summary Chart

Last, under Rule 1006, the Government seeks to admit a timeline that overlays the joebidennnn69 Charged File distributions with other activity on May's accounts and devices. *See* Att. H – Timeline by Count Summary Chart.

As support, a law enforcement witness will testify that agents recovered data from Kik, May's Facebook accounts, May's cell phone, and May's laptop. Agents then placed relevant conduct on a single timeline to create a summary of May's conduct on the operative days. This chart represents a condensed timeline that will show May's activity in a narrow window before and after each charged

distribution. The chart shows that May controlled his devices during the operative time, not some other phantom user or hacker. This chart summarizes voluminous data from multiple providers and devices, and it will be supported by witness testimony. This chart is also supported by Rule 1006.

May informed the Government at the meet and mark that he objected to the relevance of certain entries on the chart related to his business, which the Government submits are relevant to show his control of the devices. The Government will review and consider the changes requested by May.

## IV. <u>Conclusion</u>

For these reasons, the Government respectfully seeks two rulings from the Court:

1. That evidence of the uncharged child pornography files recovered from May's Kik account are admissible for three independent and sufficient reasons: (1) as inextricably intertwined evidence, (2) in the alternative, as evidence of other instances "child molestation" within the meaning of Fed. R. Evid. Rule 414(a), and (3) in the alternative, pursuant to Fed. R. Evid. Rule 404(b).

2. That under Fed. R. Evid. Rules 1006 and 611(a), the Government be allowed use summary charts and demonstrative aids to summarize voluminous evidence and assist the jury in considering voluminous evidence related to May's activity on Kik, his devices, and his accounts.

Respectfully submitted,

BRYAN P. STIRLING
UNITED STATES ATTORNEY

By: <u>*s/ Elliott B. Daniels*</u>
Elliott B. Daniels (#11931)
J. Scott Matthews
Assistant U.S. Attorneys
1441 Main Street, Suite 500
Columbia, SC 29201
Phone: 803-929-3000
Elliott.Daniels@usdoj.gov

Austin Berry
Trial Attorney
Child Exploitation and Obscenity Section
U.S. Department of Justice

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 3:25-cr-778-CMC |
| | ) | |
| vs. | ) | |
| | ) | |
| **ROBERT JOHN MAY, III,** | ) | |
| a.k.a. "joebidennnn69," | ) | |
| a.k.a. "Eric Rentling" | ) | |

**CERTIFICATE OF SERVICE**

As attorney of record, on September 17, 2025, I caused to be served one true, correct, and

filed copy of the attached **Government's Motion in Limine and 404(b) Notice**, together with its

attachments, via hand delivery on the following person(s):

Robert John May, III
c/o U.S. Marshal's Service
Edgefield County Jail
200 Railroad Street,
Edgefield, SC 29824

Respectfully submitted,

BRYAN P. STIRLING
UNITED STATES ATTORNEY

By: _s/ Elliott B. Daniels_
Elliott B. Daniels (#11931)
Assistant U.S. Attorney
1441 Main Street, Suite 500
Columbia, SC 29201
Phone: 803-929-3000
Fax: 803-254-2912
Elliott.Daniels@usdoj.gov

September 17, 2025