UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO. 3:25-cr-778-CMC |
| ) | |
| v. ) | |
| ) | |
| **ROBERT JOHN MAY, III,** ) | |
| a.k.a. "joebidennnn69," ) | |
| a.k.a. "Eric Rentling" ) | |

### Government's Response in Opposition to Defendant's Motion to Change Venue

Defendant Robert John May, III has filed a motion to change venue. ECF No. 73. The motion should be denied so that jury selection can take place to determine if actual prejudice exists.

Defendant asserts that the pretrial publicity about this case is so great that he cannot obtain a fair and impartial trial. ECF No. 73 at 1. He further asserts that the publicity has been "sustained, recent, and inflammatory," and further alleges that "much" of the publicity originated with the "government." *Id*. at 2. Defendant attached to his motion "dozens of articles" to support his argument that the publicity has been such that he cannot obtain a fair trial in the Columbia Division. "But 'pretrial publicity—even pervasive, adverse publicity—does not inevitably lead to an unfair trial.'" *Skilling*, 561 U.S. at 384 (quoting *Nebraska Press Assn. v. Stuart,* 427 U.S. 539, 554 (1976)).

There have been multiple trials with a much higher profile in which the courts have denied motions to change venue. In this district, the Dylan Roof trial proceeded in the Charleston Division where the crime occurred, notwithstanding substantially broader pretrial publicity. Similarly, the trial of the Boston Marathon bomber took place in Boston; the trial of the 1993 World Trade Center bombers took place in New York City; and the trial of Zacharias Moussaoui took place in the same District as the Pentagon. Surely, if those cases properly denied motions to change venue, so too

1

should the Court in this case. Indeed, as the Supreme Court has observed, "[p]rominence does not necessarily produce prejudice, and juror *impartiality,* we have reiterated, does not require *ignorance*. Skilling v. United States*, 561 U.S. 358, 381 (2010) (*citing Irvin v. Dowd,* 366 U.S. 717, 722 (1961) (Jurors are not required to be "totally ignorant of the facts and issues involved"; "scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case.").

### I.  Law

"A presumption of prejudice . . . attends only the extreme case." *Skilling*, 561 U.S. at 381. In *Skilling*, the Supreme Court addressed three relevant factors regarding whether a defendant had demonstrated a presumption of prejudice that required a venue transfer: (1) the size and characteristics of the community in which the crime occurred and from which the jury would be drawn; (2) the quantity and nature of media coverage about the defendant and whether it contained "blatantly prejudicial information of the type readers or viewers could not reasonably be expected to shut from sight"; and (3) the passage of time between the underlying events and the trial and whether prejudicial media attention had decreased in that time.[1]

### II.  Analysis

First, the size and characteristics of the community from which the jury will be drawn do not support the Defendant's request. The District of South Carolina Jury Selection Plan states that the Columbia Division draws from Area B[2], which is 15 counties and has an adult population of

---

[1] The Supreme Court also analyzed a fourth factor that is not relevant at this stage of the litigation: In hindsight, an evaluation of the trial outcome to consider whether the jury's conduct ultimately undermined any possible pretrial presumption of prejudice. Obviously, the fourth factor cannot be evaluated at this time.

[2] *See* District of South Carolina Jury Duty Information at https://www.scd.uscourts.gov/jury/guideline.asp (Last Accessed September 23, 2025).

approximately 1 to 1.5 million based on various online sources, including the most recent census. As the courts in *Skilling* and *Tsarnaev* reasoned, it is difficult to conclude that 12 unbiased individuals could not be selected from such a large population. *Skilling*, 561 U.S. at 382 (citing *Gentile v. State Bar of Nev.,* 501 U.S. 1030, 1044 (1991) (plurality opinion) (reduced likelihood of prejudice where venire was drawn from a pool of over 600,000 individuals)); *United States v. Tsarnaev*, 2014 WL 4823882, at *2 (D. Mass. Sept. 24, 2014) (it stretches the imagination to suggest that an impartial jury cannot be successfully selected from this large pool of potential jurors"). May has given this Court no reason to believe otherwise.

Notably, South Carolina House District 88 is entirely contained within Lexington County, leaving 14 other counties from which a jury pool would be drawn that would have no possible former constituents of Defendant. Additionally, the characteristics of the 15 counties that stretch from the northern border of South Carolina in York County to the southern border in Allendale County is diverse, further mitigating any concern about a presumption of prejudice based upon any publicity in the Lexington County area where, publicity has likely been the greatest given District 88's general news interest in the topic of the Defendant's prosecution.

Second, the quantity and nature of the media coverage might seem great to May, but is arguably minor in the overall news coverage for the area. Moreover, in *Skilling*, the Supreme Court observed that there was no publicity about any type of confession by the defendant such that a jury pool would be so tainted as to not be able to be fair and impartial. The same is true here inasmuch as May did not confess to the charges or anything even closely approximating it. Similarly, in *Skilling*, the Supreme Court reasoned that there was "[n]o evidence of the smoking-gun variety [that] invited prejudgment of his culpability." *Skilling*, 561 U.S. at 383. Likewise, May has emphasized at the detention hearing and in his motions before this Court that law enforcement did not locate any CSAM on his physical devices. Thus, there has been no media coverage that would

suggest a "smoking-gun" or confession by him. Accordingly, potential jurors are in the ordinary position of judging this case based upon the facts and law, not on any sensational publicity that has clearly demonstrated his guilt through confession or revelation of CSAM on his devices. Indeed, "any high-profile case will receive significant media attention," and thus "[i]t is no surprise that people in general, and especially the well-informed, will be aware of it. Knowledge, however, does not equate to disqualifying prejudice. Distinguishing between the two is at the heart of the jury selection process." *In re Tsarnaev*, 780 F.3d 14, 15 (1st Cir. 2015). May has given this Court would not be able to instruct the jury in a way that protects against such concerns.

Third, by the time the venire is seated, it will have been over 1.5 years since the events being charged. The *Skilling* Court noted that there had been publicity throughout the intervening time between crime and trial, but that the "the decibel level of media attention diminished somewhat." *Skilling,* 561 U.S. at 383. Similarly, as the First Circuit observed in *In re Tsarnaev*, in addition to affirming the motion to deny a venue change in the Boston Marathon bombing case, the prosecution of individuals responsible for the 1993 World Trade Center bombing took place in New York City less than a year after the bombings. *See United States v. Salameh,* 1993 WL 364486, at *1 (S.D.N.Y. Sept. 15, 1993) (finding less than a year after the bombing that a jury in New York would be "willing to try this case with an open mind" and able to "render a decision based solely upon the evidence, or lack thereof," even if the jurors had heard of the bombing before).

As the Supreme Court observed over a century ago, "every case of public interest is almost, as a matter of necessity, brought to the attention of all the intelligent people in the vicinity, and scarcely any one can be found among those best fitted for jurors who has not read or heard of it, and who has not some impression or some opinion in respect to its merits." *Reynolds v. United States,* 98 U.S. 145, 155–156 (1879). May has failed to establish that the "decibel level of media"

4

surrounding his current prosecution is any more deafening than that of the Boston Bomber, the World Trade Center bombers, the mastermind of the 9/11 terrorist attacks, or even the Roof shooting in this district. Accordingly, Defendant has failed to establish a presumption of prejudice and his motion should be denied.

### III. Conclusion

For the above reasons, the Government respectfully requests this Court deny the Defendant's motion for a change of venue.

    Respectfully submitted,

    BRYAN P. STIRLING
    UNITED STATES ATTORNEY

    By: s/Elliott B. Daniels
    J. Scott Matthews (Fed. ID # 13779)
    Elliott B. Daniels (Fed. ID # 11931)
    Assistant United States Attorneys
    United States Attorney's Office
    1441 Main Street, Suite 500
    Columbia, SC 29201
    Telephone 803-929-3000
    Facsimile 803-256-0233
    Email: Jonathan.Matthews2@usdoj.gov
    Email: Elliott.Daniels@usdoj.gov

    By: s/Austin M. Berry
    Austin M. Berry
    Trial Attorney
    Child Exploitation & Obscenity Section
    Criminal Division
    United States Department of Justice
    1301 New York Ave. NW
    Washington, D.C. 20005
    Email: Austin.Berry2@usdoj.gov

September 23, 2025